Filed 12/21/15  P. v. Guimary CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B258740 |
| Plaintiff and Respondent, | (Los Angeles County |
| v. | Super. Ct. No. NA088042) |
| ROMY GUIMARY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gary J. Ferrari, Judge.  Affirmed as Modified.

Victoria H. Stafford, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II and Jaime L. Fuster, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant and appellant Romy Guimary of one count each of first degree murder (Pen. Code, § 187, subd. (a)),[1] assault with a firearm (§ 245, subd. (a)(2)), and possession of a firearm by a felon (§ 12021, subd. (a)(1)). The jury also found gang and firearm allegations to be true. (§§ 186.22, subd. (b)(1)(C), 12022.5, 12022.53, subds. (b), (c), (e).) The trial court sentenced appellant to a total term of 62 years to life. Appellant contends the trial court erred in denying his request for jury instructions on self-defense and manslaughter. He further contends, and the People concede, that he is entitled to an additional 19 days in presentence custody credits. We order the abstract of judgment modified to reflect the additional custody credits and otherwise affirm.

## BACKGROUND[2]

On February 8, 2011, around 2:00 a.m., Andrew Anderson and Robert Jalomo were standing outside a house on I Street in Wilmington. Anderson and Jalomo were members of a gang, the Westside Wilmas. They decided to walk to Anderson's girlfriend's house to smoke marijuana.

Appellant and another person rode bicycles down the street toward Anderson and Jalomo, got off, and put their bicycles down.[3] Appellant and his companion were in the street on the other side of a parked truck from Anderson and Jalomo, who were on the sidewalk. Appellant was wearing a Washington

---

[1]    All further statutory references are to the Penal Code unless otherwise specified.

[2]    The People presented extensive evidence about appellant's arrest and cell phone records, as well as testimony by a gang expert, but we do not set it forth here because it is not pertinent to appellant's claims on appeal.

[3]    On cross-examination, Anderson admitted he did not see appellant and his companion approach on their bicycles because he was urinating in an alley at the time.

2

Nationals baseball cap with a "W" on it, which was a symbol of the Westside Wilmas gang. Appellant pointed a gun at Anderson and asked, "Where are you guys from?" Anderson understood this question to mean appellant was asking if he was in a gang. Anderson replied, "I'm not from nowhere." Then Anderson recognized appellant, whom he had known for years because they used to live about a block away from each other. Anderson knew appellant as "Beef" and said, "Hey, Beef, it's me," but appellant did not reply.[4] Jalomo replied, "Westside Wilmas, Wilhall Park." Appellant and the other person shot Jalomo about 15 times.[5] Anderson was shot in the leg.

Anderson rode his bicycle to a bar down the street to ask for help. Appellant and his companion rode away in the opposite direction.

Los Angeles Police Officers James Brimberry and Amanda Rostocil responded to a call about the shooting at 2:24 a.m. Officer Brimberry found Jalomo face down on the sidewalk. Officer Rostocil called for an ambulance, but Jalomo was pronounced dead at the scene. Traces of methamphetamine and marijuana were found in Jalomo.

Police officers found approximately five .45-caliber bullet casings and six nine-millimeter casings at the scene of the shooting. Los Angeles Police Detective Isidro Rodriguez testified that automatic firearms generally eject casings toward the right, and the casings land six to eight feet away. He stated that the casings are light and cylindrical and therefore can roll some distance after being ejected. There were strike marks on a fence behind where Jalomo was found, across the

---

[4] On cross-examination, Anderson admitted that he had never known appellant as "Beef," but as "Romeo."

[5] The gang expert opined that appellant and Jalomo were in different factions of the Westside Wilmas or that the shooting could have been a disciplinary action within the gang.

hood of the truck, and on a palm tree. Based on the location of the casings and bullet marks, Detective Rodriguez believed the evidence was consistent with the shooter standing near the left front tire of the parked truck. Detective Rodriguez further believed the evidence indicated that two firearms were used.

Los Angeles Police Officer Jane Kim conducted a brief interview of Anderson while he was in the hospital. Anderson identified one of the shooters as "Beef" and said he had known him for about ten years. Officer Kim's report of the interview indicated that appellant did not ask Anderson and Jalomo, "Where are you from?" Instead, Anderson told Officer Kim that appellant said, "What's up?" Anderson replied, "It's me, Andrew."

Around 7:00 a.m., Detective Rodriguez interviewed Anderson at the police station. Anderson said appellant and his friend had shot Jalomo, and that appellant was from the Westside Wilmas. Anderson identified appellant in a photo lineup. Based on the sound of the guns, Anderson believed one of the shooters had a revolver and that one of the guns was a .22 or .25 caliber and the other was a .38 caliber. Detective Rodriguez testified that it was not uncommon for witnesses to be mistaken about the type of gun used. Anderson told Detective Rodriguez he was concerned about retaliation against him or his family for talking to the police about the shooting.

## DISCUSSION

Appellant contends the trial court erred in denying his request for a jury instruction on imperfect self-defense. We find no evidence to support self-defense jury instructions and therefore affirm.

Trial counsel asked for jury instructions on self-defense and manslaughter, based on the theory that there were multiple shooters. He argued that there was

4

"undisputed evidence that bullets were going in two directions," and that there were shell casings from three different weapons, indicating three shooters.  He contended that if there was a shootout, self-defense instructions were warranted.  He further argued that there was evidence that appellant only asked, "What's up?" and that Anderson and Jalomo, "loaded on methamphetamine and weed," started shooting first.  The trial court denied appellant's request, stating that there was no evidence to support a jury instruction on self-defense or manslaughter.

""""Under the doctrine of imperfect self-defense, when the trier of fact finds that a defendant killed another person because the defendant *actually*, but unreasonably, believed he was in imminent danger of death or great bodily injury, the defendant is deemed to have acted without malice and thus can be convicted of no crime greater than voluntary manslaughter." [Citation.]  . . . .' [Citation.]" (*People v. Manriquez* (2005) 37 Cal.4th 547, 581.)  "The court's duty to instruct on voluntary manslaughter under an imperfect self-defense theory arises '"whenever the evidence is such that a jury could reasonably conclude that the defendant killed the victim in the unreasonable but good faith belief in having to act in self-defense."' [Citation.]  'In a murder case, trial courts are obligated to instruct the jury on defenses supported by substantial evidence that could lead to conviction of the lesser included offense of voluntary manslaughter, even where the defendant objects, or is not, as a matter of trial strategy, relying on such a defense.' [Citation.]  Substantial evidence is not """*any* evidence, no matter how weak,"""' but evidence from which a reasonable jury could conclude that the defendant was guilty only of manslaughter.  [Citation.]" (*People v. Valenzuela* (2011) 199 Cal.App.4th 1214, 1227-1228 (*Valenzuela*).)

Appellant relies on two theories to support his argument that self-defense and manslaughter instructions were warranted.  First, he contends that there was

evidence of shots being fired toward him. Second, he relies on evidence that Anderson may have lied about his version of the incident. Neither theory supports his argument.

Appellant contends that cross-examination of Detective Rodriguez elicited evidence that bullets were fired from both sides of the parked truck, indicating that shots were being fired toward appellant. The testimony cited by appellant, however, does not indicate that shots were fired at appellant. Detective Rodriguez was asked if shell casings would have landed under the truck if the shooter was standing next to the front driver's side tire and shooting over the hood of the truck. Trial counsel's theory apparently was that, if the shooter was leaning over the hood of the truck and the casings ejected to the right, the casings would not have landed in the middle of the street. However, Detective Rodriguez stated that he believed the shooters were not leaning over the hood but were slightly further back. Furthermore, Detective Rodriguez previously had testified that the casings can land six to eight feet away and roll.

Thus, contrary to appellant's argument, Detective Rodriguez' testimony does not establish that bullets were fired from both sides of the truck. Rather, his testimony indicates that the casings flew six to eight feet, rolled, and therefore could have ended up all over the street. His testimony does not constitute substantial evidence that shots were fired toward appellant. Appellant presented no evidence that there was a third weapon – to the contrary, the only evidence regarding the number of weapons is Detective Rodriguez' testimony that he believed two firearms were used. Nor is there any evidence that Jalomo or Anderson had a weapon or fired a weapon at appellant.

Appellant also relies on evidence impeaching Anderson's credibility to argue that there was substantial evidence he acted in self-defense. He points out

that Anderson lied at the preliminary hearing by denying he was a gang member. Appellant also points out that Anderson initially told police he knew appellant because they went to high school together, but he later admitted they did not go to school together and that Anderson actually graduated from home school.

In addition, appellant cites evidence of minor inconsistencies in Anderson's recounting of the incident, such as whether appellant asked Anderson and Jalomo, "Where are you from?" or instead merely asked "What's up?" Appellant further points out that Anderson told Detective Rodriguez that he and Jalomo happened to run into each other at a doughnut shop before the shooting, but Detective Rodriguez did not see them on the doughnut shop surveillance camera tape. He also argues that Anderson testified that he and Jalomo were on their way to Anderson's girlfriend's house, but at the preliminary hearing he testified that they were on their way to Jalomo's house.

The inconsistencies cited by appellant are minor and are not pertinent to whether appellant shot Jalomo because he actually "'believed he was in imminent danger of death or great bodily injury . . . .' [Citation.]" (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1066.) Thus, the trial court properly refused to instruct the jury on self-defense or manslaughter. (*Valenzuela, supra*, 199 Cal.App.4th at pp. 1227-1228.)

Appellant contends, and the People concede, that he is entitled to an additional 19 days of presentence custody credits for a total of 1,294 actual days, not 1,275 days. (See § 2900.5, subd. (a).) We modify the judgment accordingly.

**DISPOSITION**

We order the abstract of judgment to be amended to reflect a total of 1,294 actual days of presentence custody credits. The trial court shall forward the amended abstract to the Department of Corrections and Rehabilitation. As so modified, the judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, Acting P. J.


We concur:




MANELLA, J.




COLLINS, J.

8